# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PIKKII USA INC.,

       Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A TO THE COMPLAINT,

       Defendants.

Case No. 26-cv-1096

## **COMPLAINT**

Pikkii USA Inc. ("Plaintiff" or "Pikkii"), by and through its undersigned counsel, hereby files this Complaint against the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified in Schedule A hereto (collectively, "Defendants"). Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation and the goodwill associated with Plaintiff's valuable intellectual property by selling and/or offering for sale unlicensed, and infringing products making unauthorized use of Plaintiff's federally registered copyrights (the "Infringing Products"). Defendants have offered for sale, sold, and distributed the Infringing Products within this district and throughout the United States by operating e-commerce stores using their respective Store Names and Seller Names set forth in Schedule "A" hereto (collectively, the "Seller Aliases"). As alleged below, Defendants, without authorization, are using Plaintiff's federally registered copyrights by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling Infringing Products through the use and exploitation of Plaintiff's copyrights. Additionally,

1

Defendants are also liable for contributory infringement as they knowingly induce, cause, or materially contribute to the infringing conduct of others by providing means and platforms for the sale and distribution of Infringing Products. Plaintiff is forced to file this action to combat Defendants' infringement of Plaintiff's copyrights, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's copyrights; therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it has sustained and continues to sustain. In support thereof, Plaintiff states as follows:

## NATURE OF THE ACTION

1. This action has been filed to combat online copyright infringers who trade upon Plaintiff's reputation, goodwill, and valuable intellectual property by selling and/or offering for sale Infringing Products bearing or using Plaintiff's federally registered copyrights without authorization or authority to engage in such activities.

2. Pikkii is a creative gift and design company founded in 2016 that emerged from the tradition of making handmade, meaningful yet inexpensive presents for loved ones. Pikkii has grown into a multi-national company that designs, develops and produces meaningful gifts, novelty products, games and other unique products at the company's London, England studio. Pikkii USA Inc. is headquartered at 1 Corporate Drive, Grantsville, Maryland 21536. Pikkii sells products throughout the world and generates substantial revenue through various channels, including its official online platform, https://pikkii.com:





3. Pikkii is the owner and sole rights holder in and to multiple works registered with the United States Copyright Office. Such works include three registrations covering numerous photographs and one video used by Pikkii in the marketing, promotion and advertising of its

products. Pikkii registered these works with the United States Copyright Office under registrations VA 2-472-637, VA 2-472-632, and PA 2-558-058 (collectively, the "Copyrighted Works").

**<u>Image PIK-01 from Reg. No. VA 2-472-637</u>**



**<u>Image PIK-22 from Reg. No. VA 2-472-637</u>**



**Image PIK-13 from Reg. No. VA 2-472-632**



**Reg. No. PA 2-558-058**

PIK-Video-01



4.      True and correct copies of the registration certificates for the Copyrighted Works are attached as Exhibit 1.

5.      Plaintiff manufactures and sells products through its own online webstore and licenses the use of the Copyrighted Works to a limited number of manufacturers of products that are sold online around the world (collectively, the "Plaintiff's Products"). After obtaining the copyright registrations and in the ordinary course of its business, Pikkii conducted an internet investigation and discovered that the Defendants were selling Infringing Products that make use of Pikkii's Copyrighted Works and are otherwise exploiting Plaintiff's exclusive intellectual property to market and sell their Infringing Products, despite having no license or authorization to use the Copyrighted Works.

6.      Upon information and belief, Defendants' infringing activities of offering for sale, marketing, and selling Infringing Products using Plaintiff's Copyrighted Works arise from the same transaction, occurrence, or series of transactions or occurrences. Specifically, upon information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products to United States consumers. Further, upon information and belief, Defendants are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products. Moreover, the Infringing Products and their corresponding listings share similar characteristics suggestive of common ownership or a coordinated scheme.

7.      Plaintiff has been and continues to be irreparably harmed by Defendants' infringement and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for this sustained and ongoing injury.

8.      Plaintiff therefore brings this action for federal copyright infringement pursuant to 17 U.S.C. § 501(a), *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

**JURISDICTION AND VENUE**

9.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the claims in this action are brought under the Copyright Act, 17 U.S.C. § 101, *et seq*.

**Personal Jurisdiction**

10.      Federal courts may "assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F. 2d 434, 436 (3rd Cir. 1987)). This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat.§ 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit . . . (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth . . . (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." Therefore, Pennsylvania authorizes personal jurisdiction over a defendant who commits even a single tortious act in the Commonwealth for the purpose of thereby realizing pecuniary benefit. 42 Pa. Cons. Stat § 5322 (a). Courts regularly exercise

7

personal jurisdiction over a given defendant based on that defendant's operation or use of an interactive website through which products may be purchased and are sold to consumers within the judicial district. *See e.g., Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008); *Malletier v. 2016bagsilouisvuitton.com*, No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016).

11.     Although the Third Circuit has not yet considered specific jurisdictional arguments in the context of an online infringement case, this Court has found guidance on this issue from the rulings of the Seventh Circuit. *Nifty Home Prods. v. Ladynana United States*, No. 22-cv-0994, 2023 U.S. Dist. LEXIS 79743 at *13-14 (W.D. Pa. May 5, 2023). Specifically, the Court has applied the Seventh Circuit's rulings to establish personal jurisdiction over China-based infringers that have conducted commerce over the internet, even if those infringers have no presence in the United States. *Id.* at *15 (citing *NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022); *Talisman Designs, LLC v. Dasani, et al.*, No. 20-cv-1084, slip op., p. 2 (W.D. Pa. Oct. 13, 2020)). "[S]ellers on Amazon, AliExpress, and eBay 'may not avoid personal jurisdiction by this Court on the basis that the Great Wall of China renders the district court without jurisdiction to protect brand owners from counterfeit products like this.'" *Id.* (quoting *Dasani*, No. 20-cv-1084, slip op., p. 2). Foreign counterfeiting defendants are also subject to jurisdiction in this Court, and elsewhere in the United States, under Federal Rule of Civil Procedure 4(k), since they lack sufficient contact with any particular state and have not established which forum would be proper venue to bring suit. *Id.* at *16 (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009)).

12.     Alternatively, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact

and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district.

13. Upon information and belief, Defendants are and/or were systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms and storefronts, via on-line marketplace websites (the "Third Party Platforms", meaning e-commerce platforms and websites, including but not limited to Walmart and similar online marketplaces, that allow third-party sellers to offer products for sale to consumers), under the Seller Aliases, as well as any and all as yet undiscovered accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United States, including Pennsylvania, can view one or more of Defendants' online storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

14. Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert with any of them,

9

operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, in wholesale quantities at prices significantly below market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

15. Upon information and belief, Defendants' online storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

16. Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

17. Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of the Infringing Products.

18. Plaintiff also markets and offers for sale Plaintiff's Products to consumers in the U.S., including Pennsylvania, through authorized distributors and third parties via the Internet.

19. Upon information and belief, Defendants are deliberately employing and benefiting from coordinated paid advertising and marketing strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of queries. By and through their infringing activities, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of Plaintiff's genuine goods on various on-line marketplaces and/or diluting and driving down the retail market price of Plaintiff's Products; (ii) causing an overall degradation of the value of the

10

goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand and products.

20. Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

21. Upon information and belief, many Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

22. Upon information and belief, Defendants are aware of Plaintiff's Products in the market and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

**Venue**

23. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) which authorizes civil actions to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. "In making a determination as to whether venue is proper under §1391(b)(2), '[t]he test . . . is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim'[.]'" *Kneuven v. Lysten, LLC*, Civil Action No. 2:23-cv-00368, 2023 U.S. Dist. LEXIS 187157 at *6 (W.D. Pa. Oct. 17, 2023) (quoting *Bockman v. First Am. Marketing Corp.,* 459 F. App'x 157, 161 (3d Cir. 2012)). Section 1391(b)(2) does not require a court to determine the best forum, or the forum with the most substantial events. *Murphy v. Humbolt Clothing Co.,* Civil Action No. 1:20-cv-58-SPB, 2021 U.S. Dist. LEXIS 17072 at *21 (W.D. Pa. Jan. 29, 2021). "In fact, venue may be proper in more than one district. It is necessary 'only that a substantial part of the events occurred [in the forum where suit is brought].'"

11

*Id.* (quoting *Stursberg v. Morrison Sund, Pllc,* No. CV 20-1635-KSM, 2020 U.S. Dist. LEXIS 233042, 2020 WL 7319546, at *16 (E.D. Pa. Dec. 11, 2020)). Further, as stated above, both Plaintiff and Defendants conduct substantial business in Pennsylvania.

24.     Here, Plaintiff's infringement investigation centered not only on the sale of products with substantially similar expression and appearance to Plaintiff's Copyrighted Works but also the state in which Defendants were selling the Infringing Products—Pennsylvania. Therefore, a substantial part of the events giving rise to Plaintiff's claims have occurred within this forum. Upon information and belief, as discussed above and shown in Plaintiff's presented evidence attached as Exhibit 2, each of the Defendants offers products for sale infringing upon Plaintiff's Copyrighted Works to consumers in the forum. Select screenshots of Plaintiff's evidence demonstrate that Defendants were and are offering for sale and/or selling Infringing Products in this forum. This exemplary evidence is included in the table below:









25.     Each Defendant's offer for sale within the forum is a substantial part of Plaintiff's claims and establishes this forum and district as a proper venue for adjudication of this dispute. *See Murphy*, 2021 U.S. Dist. LEXIS 17072 at *21. Further, Defendants are not prejudiced by Plaintiff's selection of venue, as they may have the right to file a motion, after receiving notice of the case, contesting venue and explaining why the case should be dismissed or transferred.

26.     Venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. As discussed

herein, Defendants are subject to personal jurisdiction before this Court arising from their tortious acts within the forum. Additionally, Defendants are foreign entities who do not reside in any other United States judicial district, as provided for in Section 1391(b)(3); meaning that if the Court rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants. Similarly, Section 1391(c)(3) states that non-resident defendants may be sued in any judicial district. *See Nationwide Prop. & Cas. Ins. Co. v. Rockford Commer. Warehouse, Inc.,* No. 2:18-cv-01458-RJC, 2020 U.S. Dist. LEXIS 74182 at \*13 (W.D. Pa. Apr. 28, 2020) (holding that venue was proper over a China-based company in any district).

27.     Accordingly, venue is proper before this Court because a substantial part of the events giving rise to Plaintiff's claims occurred in the district, because Defendants do not reside in any State and are thus statutorily subject to this Court's exercise of personal jurisdiction, or because Defendants are nonresidents of the United States.

28.     For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each of the Defendants is committing tortious acts in Pennsylvania by offering for sale and/or selling their infringing goods through their online marketplaces, engaging in interstate commerce, and wrongfully causing Plaintiff substantial injury in the State of Pennsylvania.

## THE PARTIES

### Plaintiff Pikkii USA Inc.

29.     Pikkii USA Inc. is an American company headquartered in Grantsville, Maryland that sells products throughout the world and generates substantial revenue through various channels, including its official online storefront at www.pikkii.com. Plaintiff is the sole owner of

the Copyrighted Works. Plaintiff is the creator and seller of high-quality gifts, games, and related products, which are depicted in the valuable imagery created by Plaintiff for advertising, marketing and promotional purposes, and Plaintiff has registered such photographic and video works with the U.S. Copyright Office.

30. The registrations for Plaintiff's Copyrighted Works are valid and enforceable.

31. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and promoting Plaintiff's Products.

32. The use and exploitation of Plaintiff's Copyrighted Works in advertising, marketing and promoting of Plaintiff's Products increases the value of the Plaintiff's Products by demonstrating product quality, increasing brand awareness and consumer confidence.

33. Plaintiff's Copyrighted Works are intended to be used by Plaintiff to, among other purposes, market and advertise Plaintiff's Products, and represent significant commercial value in the marketplace with the potential to generate millions of dollars.

34. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and publicly display Plaintiff's Copyrighted Works.

35. Plaintiff is widely advertising and promoting its genuine Pikkii products using the Copyrighted Works via the Internet. The pikkii.com website and Third Party Platforms including Amazon have become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff has been expending significant monetary resources on Internet marketing, including search engine optimization strategies. Those strategies allow Plaintiff to educate consumers fairly and legitimately about the value associated with Plaintiff's genuine products. Similarly, Defendants' individual Seller Aliases are also indexed on the Third Party Platforms and compete directly with

17

Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business.

**The Defendants**

36. Defendants are individuals and business entities who reside in the People's Republic of China and other foreign jurisdictions, as identified in Schedule A. Defendants conduct business or assist in business conducted throughout the United States (including within the Commonwealth of Pennsylvania and this judicial district) through the manufacturing, online advertising and offering for sale, and importation and distribution of Infringing Products that incorporate or benefit from the unauthorized exploitation of the Copyrighted Works. Defendants unlawfully operate numerous e-commerce stores using their respective Seller Aliases that are targeted at and accessible by consumers in the United States.

37. Defendants appear to be an interrelated group of counterfeiters and infringers who create numerous Seller Aliases and design these stores to appear to be selling genuine versions of Plaintiff's Products, when in fact they are actually selling inferior imitations of Plaintiff's Products.

38. The Seller Aliases share unique identifiers with common design elements, such as the same or related products offered for sale, identical product descriptions or product titles, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, identically or similarly priced Infringing Products and volume sales discounts.

39. These similar elements between Defendants' respective Seller Aliases establish a logical relationship between them and suggests that Defendants' illegal operations arise out of the same transaction or occurrence, or series of transactions or occurrences.

40. Defendants attempt to evade detection and avoid and mitigate liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their stores multiple times, opening new stores, assisting others with opening new stores, and making subtle changes to their products. Further, many of the Third Party Platforms used by Defendants, including Walmart and others, do not properly verify or confirm names or addresses used by operators of the stores, which allows counterfeiters to open as many stores as they can using any number of names.

41. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to determine the precise scope and the exact interworking of their counterfeit network.

42. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend this Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

43. Plaintiff's business success and the worldwide popularity of the Pikkii line of products has resulted in significant infringement of Plaintiff's Copyrighted Works by those creating and selling counterfeit goods. Consequently, Plaintiff maintains an anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and when such activities are reported by consumers.

44. Plaintiff has identified many fully interactive e-commerce stores, including the Seller Aliases, offering for sale, and/or selling Infringing Products to consumers in this judicial district and throughout the United States on Third Party Platforms such as Walmart and others.

45. Defendants operate the Seller Aliases identified in Schedule A and make unauthorized use of Plaintiff's Copyrighted Works in promotion of their Infringing Products, which has caused and is continuing to cause irreparable harm to Plaintiff and its business.

46. Defendants' sale, distribution, and advertising of Infringing Products are highly likely to cause consumers to believe mistakenly that Defendants are offering and selling authorized Plaintiff's Products when in fact they are not.

47. Screenshot evidence showing each Seller ID on Schedule A selling Infringing Products is attached as Exhibit 2.

48. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. (*See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 2). Internet websites like the Seller Aliases are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (*Id.* at 8).

49. E-commerce retail platforms such as those used by Defendants do not require new sellers to verify and confirm their identities, allowing infringers to regularly use false names and addresses when registering with these e-commerce retail platforms.

**The Scope of Defendants' Infringing Activities**

50. Upon information and belief, each Defendant operates more than one merchant storefront.

51. Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

**CAUSE OF ACTION:**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)**

52. Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

53. Plaintiff's Copyrighted Works constitute creative, original works of authorship, fixed in a tangible medium of expression, and are protectable under U.S. copyright law. *See* 17 U.S.C. § 102. Plaintiff hereby verifies that the Copyrighted Works are original and not derived from any other copyrighted work without permission.

54. Plaintiff is the owner of valid and enforceable copyrights in Plaintiff's Copyrighted Works.

55. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's Copyrighted Works and has obtained valid copyright registrations for Plaintiff's Copyrighted Works. The copyright registrations precede the commencement of the infringing conduct alleged herein, which entitles Plaintiff to elect statutory damages and seek attorney's fees under 17 U.S.C. § 412.

56. Defendants do not have any ownership interest in Plaintiff's Copyrighted Works and have no authority to create derivative works based on them.

57. Defendants had access to Plaintiff's Copyrighted Works via the internet and elsewhere, as evidenced by their sophisticated business operations and the widespread nature of Plaintiff's Copyrighted Works, and had actual knowledge of Plaintiff's Copyrighted Works before engaging in the infringing activities described herein.

58. Without authorization from Plaintiff, the creator of the Copyrighted Works, or any right under the law to do so, Defendants have, *inter alia*, willfully used or copied Plaintiff's Copyrighted Works and reproduced, publicly displayed, and distributed Infringing Products using or incorporating Plaintiff's Copyrighted Works, in connection with their operation of the Seller Aliases.

59. Defendants use Plaintiff's Copyrighted Works to market, advertise and promote their Infringing Products which are virtually identical to or indistinguishably similar to Plaintiff's Pikkii genuine products.

60. Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe Plaintiff's copyrights in Plaintiff's Copyrighted Works in violation of 17 U.S.C. § 501(a). *See also* 17 U.S.C. §§ 106(1), (3), (5). Defendants had knowledge of the infringing activity and materially contributed to it by providing the means for others to infringe Plaintiff's Copyrighted Works through their publication of substantially similar works in connection with Defendants' distribution and sale of Infringing Products.

61. Moreover, Defendants' actions have enabled and facilitated direct infringement of Plaintiff's intellectual property interests by third parties who purchase and use the Infringing Products making use of Plaintiff's Copyrighted Works. By providing the means and platform for this direct infringement, Defendants are secondarily liable for contributory and/or vicarious copyright infringement, as established in *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). Their actions are inextricably linked to the underlying acts of direct infringement committed by the co-conspirators and downstream distributors of the Infringing Products.

62. Defendants reap the benefits of their unauthorized reproduction, public display, and distribution of Plaintiff's Copyrighted Works through their receipt of substantial revenue, including substantial profit, driven by high volume sales of their Infringing Products.

63. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating and promoting Infringing Products using Plaintiff's Copyrighted Works without its permission.

64. Defendants' infringement has been knowing, willful, intentional, malicious, and purposeful, and has been undertaken repeatedly in disregard of, and with indifference to, Plaintiff's rights. Any claim by Defendants of ignorance regarding the infringement is without merit, as the widespread nature of Plaintiff's Copyrighted Works and Defendants' sophisticated business operations make it implausible that Defendants were unaware of their infringing activities.

65. Defendants, by and through their infringing activities, have caused financial injury to Plaintiff in an amount to be determined at trial.

66. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be measured monetarily or fully compensated. Plaintiff has no adequate remedy at law for such injury.

67. Considering the foregoing, and as contemplated by 17 U.S.C. § 502, Plaintiff seeks injunctive relief prohibiting further infringement of Plaintiff's Copyrighted Works by Defendants.

68. Given that Defendants operate their own online storefronts and have the authority and ability to control their product listings and sales activities, they have the capacity to comply with any remedial injunctive relief the Court may order without undue burden.

23

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1)      Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from the following actions:

(a)      using the Copyrighted Works or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiff's Product or is not authorized by Plaintiff to be sold in connection with the Copyrighted Works;

(b)      passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's Product or any other product produced by Plaintiff, which is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Copyrighted Works;

(c)      committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff; and

(d)      manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of

24

the Copyrighted Works, including any reproductions, counterfeit copies, or colorable imitations thereof.

(e) reproducing, distributing, publicly displaying, and preparing derivative works based upon Plaintiff's Copyrighted Works;

(f) making, using, offering to sell, selling, and importing any products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of Plaintiff's Copyrighted Works;

(g) effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

(h) aiding, abetting, contributing to, or otherwise assisting anyone in infringing the Plaintiff's Copyrighted Works.

(2) Directing that Defendants deliver for destruction all Infringing Products and any other products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of any of Plaintiff's Copyrighted Works.

(3) Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

(a) locate all accounts connected to Defendants;

(b) restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c)  transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

(4)  Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

(a)  locate all accounts connected to Defendants;

(b)  restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c)  transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of such Order.

(5)  Awarding Plaintiff statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount up to $150,000 per infringed work, per Defendant, or such other amount as the Court deems just and proper;

(6)  Alternatively, should Plaintiff elect not to receive an award of statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's Copyrighted Works as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(7) Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(8) Awarding Plaintiff any and all other relief that this Court deems just and proper.

Date: May 27, 2026

Respectfully submitted,

*/s/ Keaton Smith*
Keaton Smith IL #6347736
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (872) 294-3799
Email: ksmith@whitewoodlaw.com

*Counsel for Plaintiff*